[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 FINDING OF FACT
This matter is remanded to this Court by the Appellate Court for a single limited purpose.
 ". . . the matter is remanded to the trial court for a factual finding of whether the assignment from Ninth RMA Partners, L.P. to the Cadle Company is a valid assignment."
This Court held a factual hearing on June 3, 1999. The Court ordered briefs, which were filed July 12, 1999.
 I.
On January 26, 1999 Ninth RMA Partners, L.P. purportedly acting through "Kawac, Inc. its Managing Agent," executed an "Assignment of Judgment and Liens" purporting to assign this judgment to "The Cadle Company". Plaintiffs exhibit 2. Also executed in the same fashion is an "Allonge," undated, assigning the promissory note to the Cadle Company. Plaintiffs Exhibit 3. Testimony of Faith Hupfl reveals that in December 1998 this loan was part of a group of loans delivered to the Cadle Company. The assignment of "judgment liens" document makes reference to the "Loan Sale Agreement" as being January 4, 1999, which would be the precise date of this assignment. (Stipulation of Fact, Para. 1)
The assignment documents, exhibit 2 (judgment lien) and exhibit 3 (allonge) are signed by Faith E. Hupfl, who testified in this proceeding and who is Vice President of Kawac, Inc. Kawac, Inc. was the agent of Ninth RMA Partners when this assignment was executed and delivered. (Stipulation Para. 1)
The document under which Kawac, Inc. purports to act for Ninth RMA Partners, L.P. was executed in March of 1994. It is CT Page 11831 signed by a representative of Creme, Inc., who is the General Partner of Ninth RMA Partners, L.P. It is also signed by one Joel Rabinowitz, President of Kawac, Inc. (Plaintiffs exhibit 1).
The seven-page agreement identifies the business of Ninth RMA Partners, L.P. as being ". . . to acquire, service and if desired, sell loan portfolios . . . purchased from Resolution Trust Corporation and others." The first sentence of paragraph1-1 states "The Company shall act as RMA's agent with respect to the purchase, custody and disposition of the Loan Portfolio and any part thereof." "The Company" is Kawac, Inc.
The second sentence of this paragraph ". . . appoints the Company during the term of this Agreement, as its true and lawful agent and attorney-in-fact . . ." for the "acquisition or disposition of the Loan Portfolios as contemplated hereby."
The language of paragraph 1-1 purports to make Kawac, Inc. both the agent of the partnership and to grant to Kawac, Inc. a power of attorney to accomplish the designated purposes set forth in the Management Services Agreement. The parties have stipulated that Kawac, Inc. was the agent of Ninth RMA partners when Faith Hupfl, Kawac, Inc.'s officer, executed and delivered to the Cadle Company the assignment of judgments and liens of January 4, 1999, and that Kawac, Inc. was the agent of Ninth RMA Partners, L.P. when she executed the allonge, which transferred the promissory note to the Cadle Company.
 II.
The ability of limited partnerships to act through agents
As provided in Chapter 610 of the General Statutes Sec.34-15, limited partners of a limited partnership are not responsible for the operation of the business unless they participate in the control of the business. On the other hand, per C.G.S. §34-17, the general partner has all the rights and powers as would a partner in a partnership without limited partners. Stated succinctly, the general partner runs the business.
The defendant contends that only the general partner of Ninth RMA Partners, L.P., which is a limited partnership, could perform the acts purportedly delegated to Kawac, Inc., namely the sale of this judgment and the allonge to the Cadle Company. As aforesaid, Creme, Inc. is the general partner of Ninth RMA Partners, L.P. CT Page 11832 Hence it is urged that only Creme, Inc. and not its delegate under the Management Service Agreement, Kawac, Inc. could transfer this obligation.
This argument lacks validity both in practicality and in the law. If this proposition were to be valid then, for example, an individual natural person general partner of a partnership would be required to accomplish all the functions of the business without agents. Purchasing agent, sales and all of the others function which businesses of necessity perform through agents would be required to be accomplished personally by the general partner. There could be no limited partnership of a significant size. "We begin by noting the general rule that "unless a statute provides to the contrary . . . principals may act through agents . . . and may appoint agents by written or spoken words or other conduct.'" Rich-Taulman Associates v. Commissioner ofRevenue Services, 236 Conn. 613, 619 (1996).
No statute exists such as to preclude a limited partnership from acting through outside agents. Nor does the common law impose any such prohibition. On the basis of agency the assignment to the Cadle Company by Ninth RMA Partners L.P. acting through its duly appointed agent Kawac, Inc., who was the proper party to execute the assignment was proper.
 III.
The effect of the "Power of Attorney"
The defendant claims that the assignment is ineffective because under New York law it is claimed that the document creating the power of attorney must be affixed to the transfer document, the assignment. The Management Service Agreement provides, by paragraph 6: "Governing Law. This agreement will be governed by and construed and enforced in accordance with the laws of the State of New York." Even if New York law were to be applicable, yet the Defendant's position is not well taken.
The defendant cites the case of 46 Downing Street Corp. v.Laren, 324 N.Y.S.2d 132 (1971) as authority for the proposition so advanced by the defendant. The quoted phrase from that case, stating that the attorney-in-fact "must reveal the source of his authority in any acknowledgment or verification" pertains to the context of an acknowledgment or verification which is required of citizens when performing an act which requires acknowledgment by the signer of the document. CT Page 11833
A review of the statutes of the State of New York dealing with powers of attorney, General Obligations Law, Sec. 5-15-1 through 5-1601 reveals that these statutes do not in any fashion allude to or suggest that a power of attorney must be appended to this assignment or to any other such document. It may be that certain documents executed under New York law may require the signator to execute an acknowledgment that the execution thereof is his free act and deed. The case cited by the defendant, 46Downing Street Corp. v. Laren, supra, stands for the proposition that where an acknowledgment or verification is required in the execution of a document, the attorney-in-fact must "reveal the source of his authority in any acknowledgment or verification."
The defendant does not set forth or claim in the brief that an assignment of this "judgment and liens" requires that such an assignment be acknowledged under New York law.
General Obligations Law, captioned "Transfer of judgment for sum of money" provides as follows:
§ 13-103. Transfer of judgment for sum of money
 A Judgment for a sum of money, or directing the payment of a sum of money, recovered upon any cause of action, may be transferred; but if it is vacated or reversed, the transfer thereof does not transfer the cause of action unless the latter was transferable before the judgment was recovered. A person who executes such a transfer without acknowledging his signature before an officer authorized to take the acknowledgment of a deed must so acknowledge it at the request of his assignee or of a subsequent assignee or of the judgment debtor upon payment of the officer's fees.
The purpose of this statute is obvious. It affords protection for both the assignee when purchasing the judgment; and for the debtor when paying the judgment. In the instant case the motion made to the Appellate Court produced for the debtor the assignment of the judgment with acknowledgment thereon (Exhibit 2) and, if necessary, the source of authority (Exhibit 1).
It further appears that where an acknowledgment is in fact required under New York law the failure to append the source of authority to the executed document, or to reveal it as the source of authority, is not fatal. "The fact that the power of attorney was not filed with the certificate on November 8, 1972 does not CT Page 11834 invalidate the certificate as contended by the respondent, provided appellants are able to establish the execution of the power of attorney by producing the instrument establishing the power or by secondary evidence." Micheli Contracting Corp. v.Fairwood Assoc. 418 N.Y.S.2d 164, 166 (1979). The court determines that in the absence of proof that the assignment of judgment and liens requires an acknowledgment ab initio, the absence of a revealing of source of authority in an acknowledgment is not such as to cause the assignment of the judgment to be ineffective. The Court further determines that under New York law even if the assignment had been required to be acknowledged, the later production of the instrument establishing the power, which was accomplished herein at this hearing, would be adequate to satisfy any such requirement (Micheli, supra, Stat. 13-103, supra). Under Connecticut law there appears to be no requirement that an assignment of a judgment be acknowledged nor does there appear to be any requirement that the source of authority be appended to a representative's acknowledgment. CGS 1-34 (4). See also CGS 1-60.
 III.
The assignment of the Promissory Note by Allonge
The plaintiff requests of the Court that it determine both the validity of the assignment of the judgment lien and the assignment of the allonge assigning the promissory note. Although the remand from the Appellate Court is not specific as to whether both assignments are to be determined by this Court, a reference to the defendant's motion to the Appellate Court, filed February 8, 1999 was requesting a determination of both "the underlying promissory note/and or judgment." Hence the Court concludes that the remand of the Appellate Court deals with both assignments. As to the allonge this may become significant if the judgment is set aside and a new trial is required on the underlying obligation. Otherwise the question of the note would be moot.
As to the allonge. There is no acknowledgment set forth in the body of the allonge. However, no authority is cited to support a proposition that a transfer of the note requires an acknowledgment under any circumstances. (New York Stats. Sec. 13-103 deals only with judgments). Hence the absence of a statement of, or proof of the authority of an attorney-in-fact appended to the assignment of the promissory note cannot be an issue under these circumstances. Similarly there is no such requirement under Connecticut law. CT Page 11835
Further, as is set forth in section I. of this decision, the Management Services Agreement appoints Kawac, Inc. as the agent of Ninth RMA Partners, L.P. to "dispose of the Loan Portfolios and any part thereof." This disposition, by allonge, is totally consistent with and in accordance with the agency agreement.
 IV. Conclusion
This Court determines that the assignment from Ninth RMA Partners, L.P. to the Cadle Company of the "Judgment and Liens" in this matter is a valid assignment.
This Court determines that the assignment from Ninth RMA Partners, L.P. to the Cradle Company of the Promissory Note by Allonge in this matter is a valid assignment.
L. Paul Sullivan, J.